[Cite as *State v. Mohamed*, 2016-Ohio-1116.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### Nos. 102398 and 103602

### STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

### SHUAIB A. HAJI MOHAMED

DEFENDANT-APPELLANT

### JUDGMENT:
### AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-585924-A

**BEFORE:** Stewart, P.J., Boyle, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 17, 2016

**ATTORNEYS FOR APPELLANT**

Marcus S. Sidoti
Jordan & Sidoti, L.L.P.
50 Public Square, Suite 1900
Cleveland, OH 44113

Joseph V. Pagano
P.O. Box 16869
Rocky River, OH 44116


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

Kelly N. Mason
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, P.J.:

{¶1}    A jury found defendant-appellant Shuaib Haji Mohamed guilty of gross sexual imposition, attempted gross sexual imposition, two counts of kidnapping, and one count of attempted rape.   The basis for the convictions was that Mohamed, a cab driver, sexually assaulted one of his fares.   The eight assignments of error in this appeal fall under four categories: speedy trial, the admission of evidence, the sufficiency and weight of the evidence, and sentencing.

## I. Speedy Trial Issues

{¶2} Because it is potentially dispositive, we begin with Mohamed's seventh assignment of error in which he complains that he was denied both his statutory and constitutional speedy trial rights.

{¶3} R.C. 2945.71(C) states that a person accused of committing a felony shall be brought to trial within 270 days.   If the accused is being held in jail in lieu of bail, the "triple-count" provisions of R.C. 2945.71(E) apply, meaning that the state only has 90 days in which to bring the person to trial.   If the accused makes a prima facie showing that the speedy trial time has lapsed, the burden shifts to the state to show that the speedy trial time period was tolled or extended under R.C. 2945.72.   *Brecksville v. Cook*, 75 Ohio St.3d 53, 55-56, 661 N.E.2d 706 (1996).   Continuances granted at the defendant's request will toll the speedy trial. *See* R.C. 2945.72(H).

**{¶4}** As trial commenced, defense counsel told the court that Mohamed had been held in jail without bail "in excess of 120 days," but gave no specific calculation of time. The state informed the court that Mohamed had been jailed without bail on May 26, 2014, and trial did not commence until October 1, 2014. It then rebutted Mohamed's prima facie showing of a speedy trial violation by proving that a number of continuances tolling the speedy trial time were ordered upon Mohamed's request. It calculated that the continuances requested by Mohamed left 59 days on the speedy trial time.

**{¶5}** In response to the state's tolling argument, defense counsel said that a number of "requests" for continuances were incorrectly docketed as defense requests. When asked to specify which continuances were not granted at Mohamed's request, defense counsel replied, "[r]eally, anything past the second pretrial, I would suggest." When the court asked again which of the continuances were not requested by the defense, counsel replied, "[y]our Honor, I apologize. I would have to go through the docket. I would have to research the issue as to the docketing and the case law * * *." Although not convinced of Mohamed's argument, the court allowed him to file a brief in support of the speedy trial claim. When that brief was filed, it contained no more specificity than did defense counsel's argument in open court — it simply said that certain unidentified continuances were wrongly charged to the defendant and claimed that this was a common occurrence in the court of common pleas. The court denied the motion to dismiss.

**{¶6}** Mohamed's argument on appeal is no more detailed — it again states only that the court's journal incorrectly docketed the continuances as being made at his request. At no point has Mohamed offered anything to show that the continuances were wrongly attributed to him. What is more, the record shows that Mohamed did not respond to the state's July 2014 request for discovery (he claimed that he had no discovery to give to the state, so no response was necessary). That failure to respond tolled the speedy trial time from mid-August to the October 1, 2014 trial date. *See State v. Geraci*, 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, ¶ 26. By itself, that single continuance would have tolled the trial time such that no statutory speedy trial violation occurred.

**{¶7}** Mohamed's argument that the court denied him his constitutional right to a speedy trial is likewise without merit.

**{¶8}** In addition to the statutory speedy trial right provided in R.C. 2945.71, the Sixth Amendment to the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court found that the constitutional right to a speedy trial does not turn on defined time limitations, but on a balancing of factors like the length of the delay before trial, the reason for the delay, the vigor with which the defendant has asserted his speedy trial rights, and the degree of prejudice to the defendant. *Id*. at 530.

**{¶9}** Mohamed fails the *Barker* test on all counts. A delay of one year in bringing an accused to trial is "unreasonable enough" to implicate the Sixth Amendment speedy trial right. *Doggett v. United States*, 505 U.S. 647, 651, 120 L.Ed.2d 520, 112 S.Ct. 2686 (1992), fn. 1. The delay in this case was only 39 days. There was ample reason for the delay in the form of continuances granted at Mohamed's request and his failure to respond to the state's motion for discovery. As for the vigor with which Mohamed asserted his speedy trial right, he waited until the day of trial to make a motion to dismiss and failed to support his motion with any facts. Finally, Mohamed has made no showing of any prejudice from the alleged delay in bringing him to trial. No constitutional speedy trial violation occurred.

## II. Sufficiency and Weight of the Evidence

**{¶10}** Mohamed's fifth and sixth assignments of error contest the sufficiency and weight of the evidence.

**{¶11}** The Due Process Clause of the Fourteenth Amendment to the United States Constitution "protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), quoting *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The relevant question when reviewing a claim that the state failed to present sufficient evidence of guilt "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. This is a highly deferential standard of review because "it is the responsibility of the [trier of fact] — not the court — to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. ___, 132 S.Ct. 2, 3, 181 L.Ed.2d 311 (2011).

{¶12} The state's evidence showed that after a night out drinking, the victim and a girlfriend were picked up as fares in a taxi driven by Mohamed. As they were riding in the taxi, the two women began to argue, culminating in a backseat fistfight. During the fight, the contents of the victim's purse spilled on the floor of the taxi, causing her to lose her cell phone. When they reached their destination, the victim paid the fare with her credit card. She left the taxi, only to have Mohamed pull the taxi alongside her to say that her credit card had been denied. Having no cash, the victim told Mohamed that she had a debit card in her apartment that needed to be activated, but that she would need to go to a payphone to activate it because she could not find her phone. When the victim returned to the taxi, she had changed her clothing "because of some of the comments [Mohamed] had been making on the way."

{¶13} The victim rode in the passenger seat of the taxi. They went to a gas station where the victim was able to use a telephone, activate the new card, and make a cash withdrawal from an automatic teller machine. At this point, the victim discovered that she forgot to bring the keys to her apartment. Being locked out of her apartment, she used Mohamed's cell phone to call her former boyfriend. When there was no answer, Mohamed began driving her to the former boyfriend's house. En route, he began making comments of a sexual nature to the victim, then grabbed her breasts and thighs. At one point, he pulled the taxi over on the interstate highway, exposed his penis, and attempted to force the victim's head on it. All the time, the victim was surreptitiously trying to call the former boyfriend using Mohamed's cell phone. With his sexual advances denied, Mohamed drove the victim to the former boyfriend's house. The victim exited the car and memorized the taxi's license plate number before screaming for assistance. The former boyfriend heard the screams for help and came outside, yelling at Mohamed. Mohamed sped away.

**{¶14}** We can summarily reject Mohamed's assertion that the state failed to offer forensic evidence to corroborate the victim's accusations. Corroboration goes to the credibility of the victim's accusations, not their legal sufficiency. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997).

**{¶15}** Although Mohamed argues that the state failed to prove both the gross sexual imposition and attempted gross sexual imposition counts, his appellate brief addresses only the gross sexual imposition charge contained in Count 2 of the indictment. That count charged Mohamed with grabbing the victim's breasts and vaginal area. Mohamed argues that the state failed to prove that he committed gross sexual imposition because there was no evidence to show that he touched the victim under her clothes.

**{¶16}** R.C. 2907.05(A)(1) prohibits a person from having "sexual contact" with another when the offender "purposely compels the other person, or one of the other persons, to submit by force or threat of force." "Sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." *See* R.C. 2907.01(B).

**{¶17}** The offense of gross sexual imposition does not require skin-to-skin contact. *State v. Young*, 4th Dist. Athens No. 96CA1780, 1997 Ohio App. LEXIS 3882 (Aug. 15, 1997) (holding that touching a victim's buttock through her clothing constituted sexual contact); *In re A.L.*, 12th Dist. Butler No. CA2005-12-520, 2006-Ohio-4329, fn. 1. Testimony that Mohamed grabbed the victim's breasts and thighs was sufficient to establish the offense of gross sexual imposition regardless of whether he did so over her clothing.

**{¶18}** Mohamed argues that the state failed to offer sufficient evidence to prove kidnapping as charged in Count 3 of the indictment. He argues that the victim willingly accompanied him in the taxi and had the opportunity to leave the taxi at any time before the crimes occurred.

**{¶19}** Count 3 charged kidnapping in violation of R.C. 2905.01(A)(4). That section states that no person, "by force, threat, or deception" shall restrain the liberty of a person for the purpose of engaging in sexual activity against the victim's will.

**{¶20}** A rational trier of fact could have found that Mohamed lied to the victim when he told her that her credit card had been denied, for the purpose of making her remain in his company. The day after the offenses were committed, the victim called her credit card issuer and learned that, not only did it not reject the credit card, it had no record of the victim's credit card having been charged by Mohamed. For purposes of R.C. 2905.01(A), prolonged restraint is unnecessary — even a momentary restraint of liberty will suffice to prove a violation of the statute. *See, e.g., State v. Wingfield*, 8th Dist. Cuyahoga No. 69229, 1996 Ohio App. LEXIS 867 (Mar. 7, 1996) ("the element of restraint of liberty * * * means to limit one's freedom of movement in any fashion for any period of time"). In fact, the 1974 Committee Comment to R.C. 2905.01 states that restraint "need not be actual confinement, but may be merely compelling the victim to stay where he is." Mohamed acted by deception to compel the victim to remain in his presence when he told her that her credit card had been denied, an act that constituted a restraint of liberty under R.C. 2905.01(A).

**{¶21}** Mohamed next argues that the jury's verdict was against the manifest weight of the evidence. He maintains that the victim's testimony was "confused and in conflict with her prior statement" to the police, a contradiction that he attributes to her intoxication.

**{¶22}** The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340, 515 N.E.2d 1009 (9th Dist.1986). The use of the word "manifest" means that the trier of fact's decision must be plainly or obviously contrary to all of the evidence. This is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact, *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus, and the trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). For this reason, it is only the "rare" case in which the trier of fact's verdict will be overturned as being against the manifest weight of the evidence. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶23}** Mohamed's contention that the victim was intoxicated does not accurately reflect the evidence. While it is true that the victim consumed several drinks during the night out with her friend and there was some concern about driving after drinking, she also testified that they were forced to take a taxi home from their night out because they could not find her car. The victim did not testify that her inability to find the car was the result of her being intoxicated, but rather an unfamiliarity with the area where they parked the car.

**{¶24}** Nevertheless, Mohamed does point to certain oddities in the evidence. For example, it is unclear why the victim, having claimed that Mohamed was saying "inappropriate things" to her during the initial taxi ride (he commented on the softness of her skin), would get in the front seat of the taxi even though she purposely changed her clothes in order to make herself less attractive to him. It is also unclear why Mohamed, having attempted to force the victim to perform oral sex on him, would not only drive the victim to her former boyfriend's house, but remain on the scene momentarily while the victim screamed that he had attacked her. And there was no explanation for why Mohamed, having made unwelcome advances on the victim, would allow her to use his cell phone to call the former boyfriend.

**{¶25}** But other evidence supported the victim's credibility. The victim's identification of Mohamed was not an issue because the police found her cell phone in Mohamed's cab the day after the incident. While there would be no expectation of physical evidence to prove the crime of gross sexual imposition as alleged by the victim, the jury could find the victim's version of events credible given her emotional state at the time she first reported Mohamed's actions. The former boyfriend described the victim as "panicky, distraught, scared" when she appeared at his house. A recording of the 911 call corroborated the victim's emotional state as it recorded the victim crying in the background. And the transcript shows that the victim was apparently quite emotional during her cross-examination as defense counsel asked the victim if she needed a break. The jurors no doubt placed great emphasis on these factors. When a defendant raises credibility issues, we defer to the trier of fact because it is in the better position to view the witnesses and observe their demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Mohamed has not convinced us that this is the very rare case where his conviction was manifestly against the weight of the evidence.

### III. Discovery Violation

**{¶26}** The first assignment of error complains that Mohamed was denied a fair trial because the state failed to produce the victim's recorded statement to the police until one week before trial and the DVD copy defense counsel received was defective and unplayable. Mohamed claimed a discovery violation and asked the court to dismiss the indictment as a sanction, but the court denied the motion.

**{¶27}** Although Mohamed characterizes the state's actions as a discovery violation, we find that no violation occurred. Defense counsel was in receipt of the DVD on the day that jury selection commenced, but did not actually attempt to view the DVD for days. By the state's own reckoning, it had for several months tried to give the DVD to defense counsel at pretrials, but defense counsel did not show up for those pretrials. And rather than immediately inform the state that he received an unplayable DVD, defense counsel waited until just before the start of the victim's testimony to inform the state. It has been said that the definition of chutzpah is being convicted of killing one's parents and pleading for mercy on the grounds of being an orphan. The legal analog to this is the invited error doctrine, which says that a party cannot take advantage of an error that he invited or induced. *State v. Smith*, 148 Ohio App.3d 274, 2002-Ohio-3114, 772 N.E.2d 1225, ¶ 30 (8th Dist.). It was pure chutzpah here for defense counsel to seek dismissal of the indictment as a sanction for the alleged discovery violation when he failed to make himself available to receive the DVD and then failed to view it in a timely manner.

{¶28} Although the court did not allow Mohamed to recall the victim to the witness stand, the court did allow the defense to play the DVD of the police interview of the victim for the jury. Mohamed argues that the court erred by refusing to recall the victim so that he could cross-examine her with statements made during the police statement, but he fails to explain how the court's refusal prejudiced him. Having viewed the DVD, the jury could draw whatever conclusions it desired based on any differences between the DVD and the victim's testimony. With the state unable to conduct a redirect examination of the victim to allow her to explain the inconsistencies in the statement, defense counsel had the clear opportunity to impugn the victim's veracity in closing argument.

IV. Ineffective Assistance of Counsel

{¶29} The second assignment of error complains that trial counsel was ineffective for failing to make adequate trial preparations and failing to request a jury instruction that Mohamed released the victim unharmed in a safe place.

{¶30} A defendant claiming ineffective assistance of counsel bears the burden of establishing two elements: (1) that trial counsel's performance fell below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶31}** To satisfy the first element of the *Strickland* test, appellant must direct the court to specific acts or deficiencies by his counsel. *Id*. at 690. We consider whether, in light of all the circumstances, counsel's performance was outside the wide range of professionally competent assistance. *Id*. Our assessment of counsel's performance is "highly deferential" so we indulge in "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Id*. at 689. Further, counsel's performance is evaluated in light of an attorney's discretion to develop appropriate trial strategies according to the attorney's independent judgment, given the facts of the case, at least some of which may not be reflected in the trial record. *Id*. at 689-690.

**{¶32}** To satisfy the second *Strickland* element, the defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. A "reasonable probability" is defined as one that is "sufficient to undermine confidence in an outcome." *Id*. at 694.

**{¶33}** We summarily overrule Mohamed's arguments that trial counsel was ineffective for failing to view the DVD prior to trial. While Mohamed can make the case that effective trial counsel would have viewed the DVD at an earlier point in time, he cannot show that counsel's error prejudiced him. As we noted, the court allowed Mohamed to play the entire DVD without recalling the victim to allow her to explain any inconsistencies.

**{¶34}** Mohamed next argues that trial counsel was ineffective for failing to request a jury instruction on whether he released the victim unharmed and in a safe place relative to the kidnapping charge in Count 5 of the indictment.

**{¶35}** Kidnapping is ordinarily a felony of the first degree, but if the offender "releases the victim in a safe place unharmed," kidnapping becomes a felony of the second degree. R.C. 2905.01(C)(1). There is no question that Mohamed released the victim in a safe place (she left the taxi when she arrived at the former boyfriend's apartment); the question is whether she was released unharmed. This court has held, as have many others, that the "'safe place unharmed' provision of R.C. 2905.01(C) is inapplicable [in instances where] * * * the victim is raped before being returned." *State v. Valenzona*, 8th Dist. Cuyahoga No. 89099, 2007-Ohio-6892. *See also State v. Avery*, 126 Ohio App.3d 36, 709 N.E.2d 875 (3d Dist.1998); *State v. Royston*, 9th Dist. Summit No. 19182, 1999 Ohio App. LEXIS 5999 (Dec. 15, 1999).

**{¶36}** Mohamed was found guilty of attempted rape and gross sexual imposition. Unlike a rape where the harm caused to a victim is obvious, the facts of this case do not demonstrate that Mohamed harmed the victim when committing his offenses. And to the extent that the victim suffered psychological effects from Mohamed's offenses, appellate courts have found that psychological harm "is not considered" for purposes of the statutory analysis. *State v. Wright*, 2013-Ohio-1424, 990 N.E.2d 615, ¶ 21 (7th Dist.), citing *State v. Henderson*, 10th Dist. Franklin No. 85AP-830, 1986 Ohio App. LEXIS 6317 (Apr. 8, 1986). These cases do not espouse the view that a crime victim's psychological harm is insignificant or not a harm at all: a view we also do not hold. But the cases recognize that the statute encourages the safe release of a victim while still holding the offender responsible for the kidnapping. Arguably all victims of crime are harmed in some fashion, but to apply the statute from that perspective renders the statute meaningless.

**{¶37}** With the evidence showing that the victim had been released in a safe place unharmed, defense counsel had the obligation to ask the court to instruct the jury consistent with R.C. 2905.01(C). And apart from defense counsel's failure to seek the instruction, this court has on several occasions said that it is plain error for the court to fail to give the instruction even if no instruction is requested if the evidence shows that the victim had been released in a safe place unharmed. *See State v. Fisher*, 8th Dist. Cuyahoga No. 101365, 2015-Ohio-597, ¶ 37; *State v. Carroll*, 8th Dist. Cuyahoga No. 93938, 2010-Ohio-6013, ¶ 14. The existence of plain error satisfies the prejudice prong of the test for ineffective assistance of counsel. We sustain this part of the second assignment of error and order a new trial solely on the kidnapping count.

## V. Other Acts Evidence

**{¶38}** The third assignment of error complains that the court erred by denying a motion in limine and allowing the state to introduce evidence that Mohamed smoked marijuana while driving his taxi, that the victim learned from her credit card company that her credit card had not been rejected contrary to what Mohamed told her, and that an unknown person tried to redeem a gift card that fell out of the victim's purse. Mohamed claims the state used this evidence in violation of Evid.R. 404(B) to portray him as a drug user and a thief.

**{¶39}** Evid.R. 404(B) precludes the admission of evidence of other crimes, wrongs, or acts offered to prove the character of an accused in order to show that the accused acted in conformity therewith, but it does not preclude admission of that evidence for other purposes.

**{¶40}** A police detective testified that after receiving the victim's complaint, she obtained a search warrant to search Mohamed's taxi. During that search, she discovered marijuana and a marijuana "blunt." Although the existence of the marijuana blunt did not prove any of the charged offenses, its existence corroborated the victim's assertion that Mohamed had been smoking marijuana as he drove her. The state did not offer the evidence of the marijuana blunt to prove that Mohamed was a drug user and, by implication, the kind of person who would commit a sexual assault.

**{¶41}** Testimony by the victim that she called her credit card company and learned that the credit card had not been rejected was not used as other acts evidence, but to show that Mohamed intentionally lied about the rejection of the credit card in order to perpetuate the encounter with the victim. As such, it was relevant to proving his intent to restrain her liberty, an essential element of kidnapping.

**{¶42}** Mohamed next complains about testimony concerning a gift card that the victim lost in the taxi when the contents of her purse spilled out. Before trial, Mohamed sought an order prohibiting any mention of the gift card because it appeared that the person who unsuccessfully attempted to redeem the gift card may have purchased it from Mohamed's wife. There was no mention of the gift card during the victim's direct examination by the state. However, on cross-examination defense counsel asked her if she had any further contact with the police after reporting the sexual assault. The victim replied that she did when she realized that her gift card was missing. On redirect examination, the state inquired about the gift card and the victim testified that she only discovered that her gift card was missing when she went to buy a new cell phone using the gift card and discovered it missing from her purse.

**{¶43}** Ordinarily, testimony about the gift card would have been irrelevant to the sexual assault and kidnapping charges. However, it was Mohamed who asked the question that caused the victim to mention the gift card. This question invited the error. The court specifically noted that fact when allowing the testimony, and that decision did not amount to an abuse of the court's discretion.

**{¶44}** Finally, we reject the claim made in Mohamed's fourth assignment of error that the police detective improperly bolstered the victim's credibility. The detective testified that he told the victim to "be honest and tell me everything that happened, and that's what she did." Mohamed argues that this improperly vouched for the victim's credibility. However, it is plain in context that the phrase "that's what she did" referred to telling her version of events, not the detective's opinion that the victim was honest in doing so. The court did not abuse its discretion by allowing the detective's statement into evidence.

## VI. Consecutive Sentences

**{¶45}** After merging a number of the counts, the court sentenced Mohamed to ten years on the kidnapping and five years on the attempted rape, to run consecutively. Mohamed concedes that the court made the required findings in support of consecutive sentences, but argues that the findings are not supported by the record.

**{¶46}** We agree with Mohamed that the record does not support the court's finding that his "history of criminal conduct" demonstrates that consecutive sentences are necessary to protect the public from future crime committed by him. But because Mohamed's conviction for attempted rape was ordered to be served consecutively to the kidnapping conviction that we have reversed, this assigned error is now moot for purposes of this appeal.

**{¶47}** Judgment affirmed in part; reversed in part; and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, PRESIDING JUDGE

MARY J. BOYLE, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS IN PART AND DISSENTS IN PART (WITH SEPARATE OPINION)

SEAN C. GALLAGHER, J., CONCURRING IN PART AND DISSENTING IN PART:

**{¶48}** I concur with the majority's decision with respect to the assigned errors deemed moot or affirmed, but must respectfully dissent from the majority's decision to reverse the kidnapping conviction based on the failure to instruct the jury on R.C. 2905.01(C)(1), releasing the victim in a safe place. Psychological injuries are sufficient to rebut the claim that the victim was released unharmed. *State v. Stadmire*, 8th Dist. Cuyahoga No. 81188, 2003-Ohio-873, ¶ 50 ("There was also evidence that she sustained physical and psychological injuries as a result of the kidnapping[,]" negating the need to instruct the jury as to the mitigating factor for kidnapping).

**{¶49}** The phrase "releases the victim in a safe place unharmed" has not been statutorily defined. Instead, we have concluded that in instructing the jury, the phrase should be given its

plain and ordinary meaning. *State v. Chandler*, 8th Dist. Cuyahoga Nos. 59764 and 72310, 2001 Ohio App. LEXIS 3624, *8 (Aug. 13, 2001). Harm is simply defined as either physical or mental injury. *Webster's Ninth New Collegiate Dictionary* (1990); *State v. Miller*, 6th Dist. Huron No. H-10-011, 2011-Ohio-4281, ¶ 37 (rape victims are per se harmed); *State v. Avery*, 126 Ohio App.3d 36, 44, 709 N.E.2d 875 (3d Dist.1998) (terrorizing a victim is harm). "Unharmed" is simply the opposite.

{¶50} This plain and ordinary meaning is supported by the legislature's definition of "physical harm." Had the legislature contemplated limiting "unharmed" to physical injuries alone, it would have either modified the term accordingly (physically unharmed) or defined "harm" as being a physical injury alone. R.C. 2901.01(A)(3) (defining "physical harm" as any injury, illness, or other physiological impairment). Because the legislature's definition of "physical harm" in R.C. 2901.01(A)(3) includes the modifier "physical," courts should infer that "harm" contemplates more. If the word "harm" itself was defined as physical harm alone, there was no need to modify the term in the definitional section.

{¶51} The majority's analysis compounds the error in this district's shift from the plain and ordinary meaning of "unharmed" to our reliance on an unsupported, summarily stated conclusion by the Seventh District that psychological harm is not considered for the purposes of R.C. 2905.01(C)(1). *See also State v. Fisher*, 8th Dist. Cuyahoga No. 101365, 2015-Ohio-597, ¶ 37 (mitigating the defendant's sentence because the home-invasion victim was released unharmed after the defendant assaulted, robbed, and terrorized the victim but left no physical manifestation of injury); *State v. Dove*, 8th Dist. Cuyahoga No. 101809, 2015-Ohio-2761, ¶ 42 (reducing the sentence because even though the minor victim was kidnapped and raped, the victim stayed the night before being driven home by the defendant).

**{¶52}** In *State v. Wright*, 2013-Ohio-1424, 990 N.E.2d 615 (7th Dist.), the Seventh District greatly expanded the scope of two discrete holdings from the Tenth District. *Id.* at ¶ 21, citing *State v. Henderson*, 10th Dist. Franklin No. 85AP-830, 1986 Ohio App. LEXIS 6317 (Apr. 8, 1986), and *State v. Steverson*, 10th Dist. Franklin No. 97AP11-1466, 1998 Ohio App. LEXIS 4288 (Sept. 15, 1998). Neither of the Tenth District's cases stands for the proposition that psychological harm is not considered "harm" for the purposes of R.C. 2905.01(C)(1). The Seventh District stands alone in that respect. In *Henderson,* the panel concluded that terrorizing a victim with a firearm *may* not be enough to constitute harm when the defendant is unsuccessful in his attempt to terrorize the victim. *Id.* (concluding that the fact the victim was free to leave at any time demonstrated the lack of terrorizing). In *Steverson*, for unknowable reasons, the state conceded that the mitigating factor of releasing the victim unharmed was present. *Steverson* offers little persuasive guidance.

**{¶53}** Undermining the Seventh District's conclusion, the Tenth District has issued decisions contrary to the Seventh District's broadly stated conclusion in *Wright*. In *State v. Rodgers*, 10th Dist. Franklin No. 98AP-790, 1999 Ohio App. LEXIS 1139, *4 (Mar. 16, 1999), the panel alluded to the fact that psychological harm may be enough to decline the mitigating instruction. *See also State v. Reid*, 10th Dist. Franklin No. 90AP-378, 1990 Ohio App. LEXIS 5218, *6 (Nov. 27, 1990) (attempting to rape a victim at gunpoint negates the need for the "releasing a victim in a safe place unharmed" jury instruction). Neither of those cases was considered by the Seventh District or the panels following *Wright* in this district.

**{¶54}** Mohamed kidnapped the victim by luring her back into the taxi and then sexually assaulted her. She was hardly released "unharmed" after Mohamed had already perpetrated the crimes. Offenders cannot terrorize their victims and then receive the benefit of a reduced

sentence because they limited the injuries to psychological injuries alone. *Fisher* and its progeny — following the Seventh District's summary conclusion — contravened our earlier decisions and the definition of "harm" as gleaned through the lens of statutory construction. I would accordingly affirm Mohamed's conviction and restore our earlier line of cases recognizing that "unharmed" includes consideration of psychological injuries to the victim.