[Cite as *State v. Rausenberg*, 2018-Ohio-2974.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
|     Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 16CAA020007 |
| MATTHEW D. RAUSENBERG | |
|     Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Delaware County Common
Pleas Court, Case No. 15CRI080391

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:      July 26, 2018

APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

CAROL HAMILTON O'BRIEN       JEREMY A. ROTH
Prosecuting Attorney,            ERMEL R. LUCKETT
Delaware County, Ohio          Roth Law Group, LLC
                                24 North High Street
By: KYLE E. ROHRER           Columbus, Ohio 43215
140 North Sandusky St., 3rd Floor
Delaware, Ohio 43015

*Hoffman, J.*

**{¶1}** Defendant-appellant Matthew D. Rausenberg appeals his convictions entered by the Delaware County Court of Common Pleas on forty-two counts, including gross sexual imposition, kidnapping and pandering sexually oriented material involving a minor.   Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On March 11, 2015, Detective Jason Campbell of the Delaware County Sheriff's Office received a referral from the Columbus Police Department relative to the sexual assault of a juvenile. Detective Campbell met with the juvenile on March 12, 2015.

**{¶3}** The sixteen year-old female juvenile (N.J.) stated she had been sexually assaulted by her teacher while a student at Olentangy Arrowhead Elementary School in Delaware County, Ohio. N.J. told the officers the conduct continued until 2010, as she moved through the third, fourth and fifth grades in the same school building. On at least one occasion, the teacher used a video camera to record the encounter. In March of 2015, N.J. disclosed the abuse to a Young Life counselor, a mandatory reporter, who then contacted law enforcement.

**{¶4}** At all times relevant, Appellant was a teacher at Olentangy Arrowhead Elementary School, where he taught for thirteen years, all but the last year as a second grade teacher. N.J. alleged, while she was a student at Olentangy Arrowhead, Appellant would pull her into his classroom when no one else was present. He would ask her to sit on his lap, and read children's books. While reading, Appellant would rub her body. He would unzip his pants and his penis would be exposed. N.J. could feel Appellant's penis

on her back when she sat on his lap. Appellant caused N.J. to feel his penis with her hands, and lifted up her shirt, exposing and fondling her breasts. Appellant would place his hands down her pants and rub/feel her vagina, skin to skin. N.J. maintains she attempted to push his hands away or close her legs tight, but Appellant continued. N.J. stated the incidents would cease when the classes in the building would change. The incidents began in 2006, while she was in second grade, and continued through fifth grade in 2010. Appellant utilized a video camera to record the encounter on at least one occasion.

{¶5} N.J. related an incident to investigating officers wherein, while she was in fifth grade, she took the camera utilized by Appellant from his classroom. She wrote him a note stating she "knew what he was doing is wrong," and she would report him to the police, if his behavior continued. N.J. stated, after viewing the recordings on the camera, she recognized other juveniles who were current students at Olentangy Arrowhead Elementary. N.J. told the officers Appellant continued to teach at Arrowhead Elementary.

{¶6} M.C. was a student in Appellant's second-grade classroom. Appellant would sometimes ask her to sit on his lap while working on assignments. While she sat on his lap, he would rub her thighs, and touch her private parts. Appellant was also M.C.'s third grade teacher. In third grade, she was recorded sitting on Appellant's lap. The video showed Appellant pulling up her skirt, and M.C. saying "ouch." Tr. 463. The video further showed Appellant putting her hand against his penis.

{¶7} When J.S. was a student in Appellant's classroom, he would pick her up and sit her on his lap. He started out by setting her on his thighs, gradually scooting her back towards his pelvis. Appellant massaged her hips, which made her uncomfortable.

She tried to get down from his lap, and he would clasp his hands together to restrain her from getting down.  Appellant touched J.S. in her private area, which she referred to as her "no square." Tr. 897.

**{¶8}** On March 16, 2015, officers executed a search warrant of Appellant's classroom. Upon arrival at the school, the officers found Appellant in his classroom, after school hours, working. The officers explained they were executing a search warrant for his classroom. The officers then inquired of Appellant whether he would "like to sit down and talk" to which Appellant consented. During the search of the classroom, one IPhone 5s was located in Appellant's classroom, a Polaroid camera, and one older IPhone 4. Appellant provided the passwords for both devices, and consented to the search of the devices.

**{¶9}** The Delaware County Grand Jury indicted Appellant, in Case No. 15CRI030112, on thirty-two counts, including gross sexual imposition, kidnapping and pandering sexually oriented material involving a minor. On August 21, 2015, the State dismissed the original indictment, reindicting Appellant on the original charges and ten additional charges encompassing four new victims, in Case No. 15CRI080391.  The kidnapping charges related to N.J. (Count 23), M.C. (Count 30), and J.S. (Counts 38 and 40).

**{¶10}** The case proceeded to jury trial in the Delaware County Common Pleas Court.  The jury returned a verdict of guilty on all counts except one, on which the jury returned a verdict of not guilty. Appellant was also found guilty as to the school zone specifications.  Via Judgment Entry on Verdicts entered January 26, 2016, the trial court entered judgment of convictions as found by the jury.

**{¶11}** Via Judgment Entry on Sentence entered January 28, 2016, the trial court sentenced Appellant to a total definite sentence of seventy-six years, consecutive to an indefinite sentence of thirty years to life. The trial court further designated Appellant a Tier III child victim offender, subject to lifetime registration.

**{¶12}** Appellant appealed the judgment to this Court, assigning as error violation of his right to speedy trial, error in overruling his motion to suppress, error in issuing a search warrant based on stale and improper information, and error in denying his motion for change in venue. We overruled all assignments of error and affirmed the judgment of the trial court. *State v. Rausenberg,* 5th Dist. Delaware No. 16CAA020007, 2017-Ohio-1078.

**{¶13}** Appellant filed a motion to reopen his appeal pursuant to App. R. 26(B). We overruled the motion on all issues except for one: whether the judgment is against the manifest weight and sufficiency of the evidence on four counts of kidnapping. At the time of the motion to reopen, *State v. Mohamed*, 8th Dist. Cuyahoga Nos. 102398, 103602, 2016-Ohio-1116, was pending before the Ohio Supreme Court. In that case, the Eighth District Court of Appeals held psychological harm is not "harm" for purposes of R.C. 2905.01(C)(1), which reduces the offense of kidnapping from a felony of the first degree to one of the second degree if the victim is released in a safe place, unharmed.

**{¶14}** Subsequent to our judgment granting partial reopening of the appeal, the Ohio Supreme Court reversed the decision of the Eighth District, finding psychological harm is "harm" within the meaning of the statute. *State v. Mohamed,* 151 Ohio St.3d 320, 88 N.E.3d 935, 2017-Ohio-7468.

**{¶15}** Appellant assigns the following error on reopening of his appeal:

"THE CONVICTIONS OF APPELLANT ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND/OR ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE GENERALLY, AND SPECIFICALLY AS TO THE CONVICTIONS FOR KIDNAPPING AS FELONIES OF THE FIRST DEGREE."

**{¶16}** As a preliminary matter, the State argues Appellant's argument on reopening was a very narrow legal issue of whether psychological harm is included within the definition of "safe place unharmed" in R.C. 2905.01(C)(1). The State argues given the Ohio Supreme Court's holding in *Mohamed, supra,* that question has been answered in the affirmative, and Appellant's assignment of error should be summarily overruled. We decline to do so. We allowed reopening on the issue of whether the judgment is against the manifest weight and sufficiency of the evidence on four counts of kidnapping, and will consider Appellant's arguments concerning lack of evidence of psychological or physical harm.

**{¶17}** Appellant was convicted of four counts of kidnapping in violation of R.C. 2905.01(A)(2):

(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means,

shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

(2) To facilitate the commission of any felony or flight thereafter[.]

**{¶18}** R.C. 2905.01(C)(1) provides:

Whoever violates this section is guilty of kidnapping. Except as otherwise provided in this division or division (C)(2) or (3) of this section, kidnapping is a felony of the first degree. Except as otherwise provided in this division or division (C)(2) or (3) of this section, if an offender who violates division (A)(1) to (5), (B)(1), or (B)(2) of this section releases the victim in a safe place unharmed, kidnapping is a felony of the second degree.

**{¶19}** The trial court instructed the jury on each of the four counts if they found Appellant guilty of kidnapping, to consider whether he released the victim in a safe place unharmed. Tr. 1378, 1393, 1409, 1413. On each of the four counts, the jury by separate verdict form found Appellant did not release the victim in a safe place unharmed.

**{¶20}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492,

paragraph two of the syllabus (1991). However, whether a victim is released in a safe place unharmed is not an element of the offense which the State must prove; rather, the accused must prove it in the nature of an affirmative defense. *State v. Sanders,* 92 Ohio St. 3d 245, 265, 750 N.E.2d 90, 2001-Ohio-189. Because "safe place unharmed" is not an element of the offense which the State must prove, we find no merit in Appellant's claim the judgment finding he did not release the victims in a safe place unharmed is not supported by sufficient evidence.

{¶21} We therefore address only Appellant's claim the jury's verdict is against the manifest weight of the evidence as to the jury's findings Appellant did not release the victims in a safe place unharmed.

{¶22} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶23} In *Mohamed, supra,* the Ohio Supreme Court found psychological harm may be considered in determining whether the victim was released in a safe place unharmed:

"Unharmed" means "not harmed." Webster's Third New International Dictionary 2497 (2002). "Harm" is defined in the dictionary as "physical or

mental damage." *Id.* at 1034. This is consistent with how we use the word in ordinary conversation. We use the term "harm" to describe both physical injuries and emotional or psychological injuries. We might say that someone was "mentally harmed" or that they were "physically harmed," but in both cases, we say that they were "harmed." Under its plain meaning, the statute includes both physical and psychological harm.

This plain-meaning approach is consistent with the way the General Assembly has used the term in statutes. When the legislature wants to limit harm to physical harm, it has done so explicitly. The assault statute, for example, prohibits anyone from knowingly causing "physical harm to another." R.C. 2903.13(A). Indeed, in over 150 different sections of the Revised Code (including 89 sections of the criminal code, R.C. Title 29), the General Assembly specifies "physical harm." It did not do so in R.C. 2905.01(C)(1). We cannot create a limitation of harm to "physical" harm that is not found in the statutory language. The lower court erred in holding otherwise.

2017-Ohio-7468, ¶¶14-15.

**{¶24}** The victim in Count 23 was N.J. She testified when she noticed Appellant was recording himself touching her, she got fed up and stole his camera. She wrote him a ten-page letter telling him how much she hated him. She wrote she knew what he was doing and didn't want to ever see him again. When he tried pulling her out of class after he received the letter, she started screaming and crying. She told her Young Life leader

she had been upset about something for a very long time.  N.J.'s mother testified N.J. used to be outgoing and hyperactive, wanting to please everyone.  However, after these incidents with Appellant she shut down.  She would wake up at night screaming, crying, and going into a rage.  She still goes through "that drama" and continues to wake up at night.  Tr. 529.  From this testimony, we find the jury could conclude N.J. was psychologically harmed by Appellant's actions.

{¶25} The victim in Count 30 was M.C.  A video was admitted into evidence showing Appellant holding M.C. on his lap in the classroom.  Throughout the video, M.C. is heard saying "ouch" or "ow" several times, and at one point says, "stop, that hurts." She also says "no" repeatedly.  A portion of the video was played during M.C.'s testimony. When asked why she said "ouch," M.C. testified because what he was doing hurt her. When asked why she was seen trying to move Appellant's hand in the video, she testified, "Because he, um, he was hurting me."  Tr. 464. Further, on cross-examination, when asked why in the video she told Appellant to let her go, M.C. testified she was afraid.  Tr. 467.  From the video and M.C.'s testimony, we find the jury could conclude Appellant caused M.C. both physical and psychological harm.

{¶26} The victim in Counts 38 and 40 was J.S.  She testified at trial her babysitter saw that she was acting strange.  While J.S. previously liked to hug people, after the incidents with Appellant she did not like anyone to touch her, and did not like hugs.  From this evidence, we find the jury could conclude Appellant caused psychological harm to J.S.

{¶27} Further, as an independent basis for the jury's verdict, we find the jury could find from the evidence the victims were not released in a safe place.  While Appellant

argues the school is a safe place, the victims were released into the classroom where the crimes against them took place, and Appellant, the perpetrator of the crimes, was both present and in charge of the class. The jury could have concluded Appellant's classroom ceased to be a safe place for the victims by his commission of crimes against them there, and they were therefore not released in a safe place unharmed.

**{¶28}** We find the jury's finding Appellant did not release his kidnapping victims in a safe place unharmed is not against the manifest weight of the evidence.

**{¶29}** The assignment of error is overruled. The judgment of the Delaware County Common Pleas Court is affirmed.

By: Hoffman, J.

Gwin, P.J. and

Baldwin, J. concur