[Cite as *State v. Moffett*, 2016-Ohio-5314.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 28001 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| SATOYA D. MOFFETT | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 2014 05 1480 |

DECISION AND JOURNAL ENTRY

Dated: August 10, 2016

HENSAL, Judge.

{¶1} Defendant-Appellant, Satoya Moffett, appeals her conviction and sentence for endangering children from the Summit County Court of Common Pleas. For the following reasons, we affirm.

I.

{¶2} In April 2014, Ms. Moffett was in a long-distance relationship with J.W., whom she had been dating for about a year. Ms. Moffett lived in Erie, Pennsylvania, but would often visit J.W. at her apartment in Cuyahoga Falls. During this time, J.W. was working as an academic advisor and pursuing a doctorate degree. J.W. employed a nanny to care for her then two-year-old daughter, N.W., while she was at school and work.

{¶3} On April 28, 2014, J.W.'s nanny was unable to care for N.W. because her husband had suffered a heart attack. Ms. Moffett was in town and offered to care for N.W while J.W. went to school and work. Ms. Moffett took N.W. to Wal-Mart to purchase hair ties, and

then later to Chapel Hill Mall to ride the carousel. While on the carousel, Ms. Moffett took a picture of N.W. to send to J.W. After taking the picture, N.W. reached for Ms. Moffett's cell phone because she wanted to see the picture and slipped off of the carousel. Ms. Moffett, however, caught N.W. before she fell to the ground, and she sustained no injuries.

{¶4} Ms. Moffett and N.W. then headed back to J.W.'s apartment. Upon arriving, Ms. Moffett walked down the four cement stairs that led to the apartment door and left N.W. at the top of the stairs. While unlocking the door, N.W. fell down the stairs. According to Ms. Moffett, N.W. "teared up a little bit" but otherwise did not complain of any injuries. Also according to Ms. Moffett, when they got inside, she realized that N.W. was bruised and swollen, so she contacted J.W. J.W. returned home shortly thereafter and they took N.W. to Akron General Medical Center in Stow.

{¶5} Upon arriving to the hospital, the examining physician noted that N.W.'s injuries – including injuries to her head, neck, buttocks, thighs, and abdomen – were not consistent with falling down the stairs, and suspected child abuse. The physician contacted the Stow police, and an officer arrived shortly thereafter. That officer, however, contacted the Cuyahoga Falls police after realizing it was their jurisdiction. He then took photos of N.W.'s injuries.

{¶6} An officer from the Cuyahoga Falls police department arrived and noted serious injuries to N.W.'s head, legs, and abdomen. At trial, he testified that N.W.'s injuries were the most severe injuries he had seen on a child in his 19-year career with the police force. N.W. was then transferred to Akron Children's Hospital's trauma unit, where she reported that Ms. Moffett "spanked" her and "hit [her] with a belt." N.W. also reported that she fell down the stairs.

{¶7} N.W. was treated for injuries to her head, thighs, buttocks, face, lower abdomen, and spine, which the treating physician attributed to "multiple blows" to N.W.'s body with a belt

or belt-like instrument. Children's Services took N.W. under their care, and a detective from the Cuyahoga Falls police department interviewed Ms. Moffett. During the interview, Ms. Moffett maintained that N.W.'s injuries were a result of her falling down the stairs. She admitted, however, that no one else had access to N.W. that day, and that N.W. did not have any injuries that morning.

{¶8} A grand jury indicted Ms. Moffett on one count of felonious assault under Revised Code Section 2903.11(A)(1), one count of endangering children under Section 2919.22(A), and one count of child endangering under Section 2919.22(B)(1). Ms. Moffett waived her right to a jury trial, and the case proceeded to a bench trial. The trial court found Ms. Moffett guilty of all charges and, because the counts merged, the State elected to proceed with sentencing as to the endangering children charge under Section 2919.22(B)(1). The trial court then sentenced Ms. Moffett to eight years of imprisonment. Ms. Moffett now appeals, raising three assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

APPELLANT WAS DEPRIVED OF HER RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, MERITING REVERSAL.

{¶9} In her first assignment of error, Ms. Moffett argues that her counsel was ineffective because he failed to obtain experts, and that this failure affected the outcome of trial. Specifically, she argues that her counsel failed to secure a medical expert to refute the State's medical experts' opinions, and failed to secure an expert in the field of childhood development that could opine as to the ability of a child of N.W.'s age to negotiate stairs.

**{¶10}** "To establish ineffective assistance of counsel, a defendant must demonstrate that h[er] counsel's performance fell below an objective standard of reasonable representation and that [s]he was prejudiced by that performance." *State v. Smith*, 9th Dist. Summit No. 24382, 2009-Ohio-1497, ¶ 9, citing *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. As this Court has stated, "[a] defendant must demonstrate that defense counsel's trial tactics prejudiced h[er], not merely speculate that trial counsel's allegedly deficient performance prejudiced the defense." *State v. Jones*, 9th Dist. Summit No. 21448, 2003-Ohio-4518, ¶ 12. A defendant, therefore, cannot establish ineffective assistance of counsel based upon his or her trial counsel's failure to obtain an expert witness when the defendant's argument is based "entirely upon speculation that such a witness exists, and speculation as to what the testimony of such a witness would be." *Id.* at ¶ 13. *See In re Ohler*, 4th Dist. Hocking No. 04CA8, 2005-Ohio-1583, ¶ 28 (rejecting the appellant's ineffective-assistance-of-counsel claim and stating that "[i]n order to find prejudice, we would have to presume that another expert would have testified favorably on the appellant's behalf. Such an assumption would amount to pure speculation * * *.").

**{¶11}** Here, Ms. Moffett's argument is based entirely upon speculation that a medical expert and/or expert in the field of childhood development would have provided relevant, favorable testimony on her behalf. She, therefore, has not established prejudice for purposes of proving ineffective assistance of counsel. *See State v. Murawski*, 8th Dist. Cuyahoga No. 70854, 2002-Ohio-3631, ¶ 8 ("Arguing what * * * a witness might have testified requires a court to indulge in baseless speculation, which will not establish prejudice."). To the extent that Ms. Moffett's argument is dependent on evidence outside the record, it is more appropriately

reserved for a petition for post-conviction relief. *State v. Capers*, 9th Dist. Lorain No. 10CA009801, 2011-Ohio-2443, ¶ 22. Ms. Moffett's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

MOFFETT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, MERITING REVERSAL.

{¶12} In her second assignment of error, Ms. Moffett argues that her convictions were against the manifest weight of the evidence. In this regard, she argues that the evidence did not establish that she caused N.W.'s injuries. She further argues that the State's witnesses were biased and not credible.

{¶13} If a defendant asserts that a conviction is against the manifest weight of the evidence,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶14} The State presented testimony from N.W.'s mother, two responding police officers, the detective that interviewed Ms. Moffett, and two treating physicians (Dr. Carol Cunningham and Dr. R. Daryl Steiner, the medical director of the CARE center at Akron Children's Hospital). Both physicians testified that N.W.'s injuries were not consistent with a fall. In this regard, N.W. did not present with localized abrasions, cuts, or scrapes, which would

be consistent with falling down cement stairs. Instead, N.W. presented with bilateral welt-like injuries over several areas of her body.

{¶15} Dr. Steiner testified that N.W. "suffered physical abuse, and that physical abuse resulted in massive bruising to the head and face, body surface injury to the extremities and a tear of the nuchal ligament in the cervical spine." He further testified that N.W.'s injuries appeared to come from a belt or belt-like instrument. On cross-examination, Dr. Steiner testified that falling down stairs could not cause a spinal injury. Dr. Cunningham, however, testified that a fall could potentially cause a spinal injury depending on the mechanism of injury.

{¶16} The detective testified that Ms. Moffett's story "made no sense" in light of N.W.'s injuries. Further, one of the police officers testified that, although N.W. initially told him she had fallen off of the carousel, she later told him that Ms. Moffett hit her with a belt. Further yet, N.W.'s mother testified that Ms. Moffett once told her she was too lenient with N.W., and that N.W. "needed a good whooping." When asked whether she was lying in order to get her daughter back from Children's Services, J.W. replied that she was not.

{¶17} Ms. Moffett was the sole witness for the defense. She testified that N.W. did not have injuries that morning, that she was the only person that had access to N.W. all day after J.W. left for school, and that N.W.'s injuries were a result of her falling down the cement stairs. She further testified that she "never hit [N.W.]"

{¶18} In support of her argument that her conviction was against the manifest weight of the evidence, Ms. Moffett argues that Dr. Steiner was not credible. Ms. Moffett cites the fact that Dr. Steiner and Dr. Cunningham's opinions differed as to whether a fall could hypothetically cause a spinal injury. She also argues that J.W. was not credible because it was in her best interest to cooperate with the State in order to regain custody of N.W.

{¶19} Regarding the allegedly inconsistent expert testimony, both physicians made clear that N.W.'s particular injuries were not consistent with a fall down cement stairs. The fact that they differed as to whether a fall, in general, could cause a spinal injury is of no consequence here. Regarding J.W.'s alleged bias, the prosecutor specifically asked J.W. whether she was lying in order to regain custody of her daughter, to which she responded she was not.

{¶20} To the extent that the trial court's verdict relied upon the credibility of the State's witnesses, "[c]redibility determinations are primarily within the province of the trier of fact[,]" who is "'free to believe all, part, or none of the testimony of each witness.'" *State v. Just*, 9th Dist. Wayne No. 12CA0002, 2012-Ohio-4094, ¶ 42, citing *State v. Violett*, 9th Dist. Medina No. 11CA0106–M, 2012–Ohio–2685, ¶ 11; *Id.*, quoting *State v. Cross*, 9th Dist. Summit No. 25487, 2011–Ohio–3250, ¶ 35. Here, the record reflects that the trial court weighed the evidence and resolved credibility determinations in favor of the State. Indeed, the trial court specifically stated, "I don't believe [Ms. Moffett]. That's the bottom line." The fact that the trial court chose to believe the State's version of the events is not a basis for reversal. *State v. Knicely*, 9th Dist. Wayne No. 10CA0029, 2011-Ohio-4879, ¶ 20. Ms. Moffett's second assignment of error is overruled.

III.

{¶21} Ms. Moffett's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

KRISTEN KOWALSKI, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.