[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Mohamed,* Slip Opinion No. 2017-Ohio-7468.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-7468

THE STATE OF OHIO, APPELLANT, *v.* MOHAMED, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Mohamed,* Slip Opinion No. 2017-Ohio-7468.]**

*R.C. 2905.01—Kidnapping—The term "harm," for purposes of R.C. 2905.01's "safe place unharmed" provision, includes both physical and psychological harm—Trial counsel was not ineffective in failing to request safe-place-unharmed jury instruction, and trial court did not commit error in failing to provide the instruction.*

(No. 2016-0672—Submitted May 3, 2017—Decided September 7, 2017.)

APPEAL from the Court of Appeals for Cuyahoga County,

Nos. 102398 and 103602, 2016-Ohio-1116.

_____

**DEWINE, J.**

**{¶ 1}** Ohio's kidnapping statute reduces the level of the offense from a first-degree felony to a second-degree felony if the victim is released in a "safe place unharmed."  R.C. 2905.01.  This case presents the question whether "harm," for

purposes of the statute, encompasses not only physical harm but also psychological harm. We conclude that it does.

{¶ 2} In the proceeding below, the court of appeals reversed a first-degree kidnapping conviction based upon its determination that trial counsel had been ineffective in failing to request a safe-place-unharmed instruction and that the trial judge had committed plain error by not sua sponte providing the instruction. The court of appeals reasoned that there was no *physical* harm to the victim and that "harm," for purposes of R.C. 2905.01, could not include psychological harm. We see it differently. We apply the plain meaning of "harm" to include both physical and psychological harm. And with "harm" properly defined, we conclude that on the record before us, counsel was not ineffective in failing to request such an instruction; rather, his not requesting the instruction fell within the gamut of trial strategy. Further, we find no plain error in the judge's failure to give the instruction. Thus, we reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

### I. The Incident

{¶ 3} A jury found taxicab driver Shuaib Haji Mohamed guilty of several felonies based upon Mohamed's sexual assault of one of his fares. The victim, J.K., had spent the evening drinking at several establishments in downtown Cleveland with her best friend Stephanie. After the bars closed, the pair were unable to locate their car and ended up hailing Mohamed's cab. J.K. got in the front passenger seat of the minivan taxi and her friend got in the back. In the cab, the women started arguing about the lost car and wound up slapping and hitting each other. During the scuffle, J.K.'s purse was dumped on the floor, and she lost her cell phone. Mohamed eventually stopped the cab near their destination, pulled the girls apart, and the women set off in separate directions.

{¶ 4} At trial, J.K provided this account of what happened next. As she was walking away, Mohamed caught up with her and told her that the credit card she

had used to pay the fare had been declined and that if she did not pay, he was going to call the cops. J.K. promised Mohamed that if he would drive her to her apartment, she had a new debit card that she could activate and use to withdraw cash from a nearby ATM.

{¶ 5} On the way to the apartment, Mohamed remarked that in breaking up the fight, he had noticed that J.K.'s " 'skin was so soft.' " Made uncomfortable by the comment, J.K. put on sweatpants and grabbed a large hooded sweatshirt while she was in the apartment retrieving her debit card. After the stop at the apartment, Mohamed drove J.K. to a nearby gas station that had an ATM. She withdrew $110 in cash and paid for the cab ride. The night, however, was still not over.

{¶ 6} As they were leaving the gas station, J.K. realized she had locked her keys in her apartment and would not be able to get back inside, so she asked Mohamed to take her to her ex-boyfriend Rodney's house. Soon after they pulled out of the gas station, Mohamed began to touch her thighs. She told him to stop, but he persisted. While on Interstate 71, Mohamed stopped the cab on the side of the road, pulled out his penis, and shoved J.K.'s head down in an apparent attempt to force her to perform oral sex. He also grabbed her breasts. J.K. fought him off, and Mohamed resumed the trip to Rodney's house. At some point during the ride, J.K. borrowed Mohamed's phone and tried to call Rodney. She dialed the number over 50 times, but he did not answer.

{¶ 7} The taxicab eventually made it to its destination. J.K. immediately got out of the cab, went to the house, and began to bang on the windows. Mohamed waited in the cab. When Rodney came to the door, J.K. told him that Mohamed had just tried to rape her. At trial, Rodney described J.K. as "panicky, distraught, [and] scared." He yelled at the cabdriver from the door, but Mohamed sped away.

{¶ 8} According to Mohamed's counsel, J.K.'s story was one big lie. Throughout trial, he sought to undermine her credibility. He asserted that J.K. was highly intoxicated that night and that she and her friend had taken a cab because

she was too drunk to remember where she had parked her car. He brought out in cross-examination that Mohamed had allowed J.K. to use his cell phone to call her ex-boyfriend. He argued that J.K. had multiple opportunities to leave the cab during the evening, but had not done so. And he pointed out that J.K. had not sought treatment following the incident—behavior that counsel claimed was inconsistent with someone who had been sexually assaulted.

{¶ 9} The jury believed J.K. and found Mohamed guilty of the five felony counts on which he had been charged—one count of gross sexual imposition, one count of attempted gross sexual imposition, two counts of kidnapping, and one count of attempted rape.

{¶ 10} On appeal, the Eight District Court of Appeals reversed one of the kidnapping convictions.[1] The court noted that kidnapping is ordinarily a felony of the first degree but is a felony of the second degree if the offender "releases the victim in a safe place unharmed." 2016-Ohio-1116, ¶ 35, citing R.C. 2905.01(C)(1). The court concluded that Mohamed had released J.K. in a safe place unharmed, relying on its determination that "psychological harm 'is not considered' for purposes of the statutory analysis." *Id*. at ¶ 36-37, quoting *State v. Wright*, 2013-Ohio-1424, 990 N.E.2d 615, ¶ 21 (7th Dist.), citing *State v. Henderson*, 10th Dist. Franklin No. 85AP-830, 1986 WL 4366 (Apr. 8, 1986). "Arguably all victims of crime are harmed in some fashion," the court explained, "but to apply the statute from that perspective renders the statute meaningless." *Id.* Having determined that psychological harm was not to be considered, the court found no evidence that Mohamed had harmed J.K. *Id.* at ¶ 37. The court concluded that defense counsel had been ineffective in not requesting the safe-place-unharmed instruction and that

---

[1] Inexplicably, the court of appeals reversed only one of the two kidnapping convictions. Presumably the same logic would apply to both of the kidnapping counts on which Mohamed was convicted, and if Mohamed were entitled to a new trial on one of the kidnapping counts, he would also be entitled to a new trial on the other count. In light of our disposition of this case, however, this is not a matter we need consider further.

4

the trial court had committed plain error in failing to provide the instruction. A dissenting judge opined that the majority's conclusion was at odds with the plain and ordinary meaning of the word "unharmed." *Id.* at ¶ 49-51 (Gallagher, J., concurring in part and dissenting in part).

{¶ 11} The court remanded the cause for a new trial solely on one of the kidnapping counts. In light of its disposition, the court concluded that one of Mohamed's assignments of error, which related to a purported error in the imposition of consecutive sentences, was moot and declined to rule on the issue. *Id.* at ¶ 46.

{¶ 12} We granted the state's discretionary appeal. 146 Ohio St.3d 1489, 2016-Ohio-5585, 57 N.E.3d 1169.

## II. Psychological Harm Is Harm

{¶ 13} Because the court of appeals based its ineffective-assistance-of-counsel and plain-error holdings on its finding that Mohamed had released J.K. in a safe place physically unharmed, we first must decide whether the definition of "harm" in the kidnapping statute also contemplates psychological harm. We start, as we always do in cases of statutory interpretation, with the plain and ordinary meaning of the statutory language.

{¶ 14} "Unharmed" means "not harmed." *Webster's Third New International Dictionary* 2497 (2002). "Harm" is defined in the dictionary as "physical or mental damage." *Id.* at 1034. This is consistent with how we use the word in ordinary conversation. We use the term "harm" to describe both physical injuries and emotional or psychological injuries. We might say that someone was "mentally harmed" or that they were "physically harmed," but in both cases, we say that they were "harmed." Under its plain meaning, the statute includes both physical and psychological harm.

{¶ 15} This plain-meaning approach is consistent with the way the General Assembly has used the term in statutes. When the legislature wants to limit harm

to physical harm, it has done so explicitly. The assault statute, for example, prohibits anyone from knowingly causing "physical harm to another." R.C. 2903.13(A). Indeed, in over 150 different sections of the Revised Code (including 89 sections of the criminal code, R.C. Title 29), the General Assembly specifies "physical harm." It did not do so in R.C. 2905.01(C)(1). We cannot create a limitation of harm to "physical" harm that is not found in the statutory language. The lower court erred in holding otherwise.

### III. Ineffective Assistance of Counsel and Plain Error

{¶ 16} Ultimately, the trier of fact decides whether a victim has been released in a safe place unharmed, and we hold in this case that triers of fact may consider the psychological harm to the victim in making that determination. However, our holding that the lower court erred in writing a psychological-harm exclusion into the statute does not resolve the matter. Here, arguably at least, a jury might have found based upon the evidence presented at trial that J.K. was released unharmed both physically and psychologically. The questions are then, with a proper definition of the term "unharmed" guiding our analysis, was counsel ineffective for failing to ask for the safe-place-unharmed jury instruction and did the trial court commit plain error in failing to provide such an instruction? In our view, the answer to both questions is no.

#### A. Ineffective Assistance of Counsel

{¶ 17} Considering the record as a whole, we determine that Mohamed has failed to overcome the presumption that counsel's failure to request the safe-place-unharmed instruction was the result not of ineffectiveness but of trial strategy. To show that his trial counsel was ineffective, Mohamed was required to prove that his counsel's performance fell below an objective standard of reasonable representation and that the deficiency prejudiced him. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶ 18}** Questionable trial strategies and tactics, however, do not rise to the level of ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980). "To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995), citing *Strickland* at 689.

**{¶ 19}** In *Clayton*, the defendant was charged with and convicted of two counts of attempted murder. *Clayton* at 45. On appeal, the defendant challenged his counsel's decision not to request jury instructions on lesser included offenses. *Id.* at 46, 48-49. We concluded that the decision not to request the mitigating instruction, despite being a "tactical error" and a "questionable" strategy, did not rise to the level of ineffective assistance of counsel. *Id.* at 48-49. Simply because there was "another and better strategy available" did not mean that counsel provided ineffective assistance. *Id.* at 49.

**{¶ 20}** In this case, Mohamed's counsel's trial strategy was simple: completely deny that any kidnapping or sexual assault occurred and attack the credibility of J.K. Throughout trial, counsel maintained that J.K.'s story just didn't add up: if what she said about Mohamed's conduct were really true, she would have taken advantage of the multiple opportunities she had to flee. She could have stayed in her apartment when she went back to get her debit card, taken off when he took her to the ATM, or jumped out of the cab at a stop sign on the way to her ex-boyfriend's home. In addition, he pointed out that at no point did Mohamed brandish a weapon and that, even under her account, J.K. had been able to physically fight off Mohamed. Nor did J.K. seek medical attention after the alleged assault.

**{¶ 21}** Counsel closed with an attack on J.K.'s veracity. He charged that she was "evasive on the stand," had "impeach[ed] herself," and had gotten "caught up in her own lies." He finished with this summation: "What I'm saying to you is

that the story is preposterous. It's preposterous. It is offensive, it is deceitful and misleading. If you can go back and convict him on that, God bless, God bless. I'm done."

{¶ 22} Understood in this context, defense counsel's decision not to request a jury instruction concerning the safe-place-unharmed defense would seem to be part of a reasonable trial strategy. The theory that defense counsel presented to the jury was that the victim was telling one big whopping lie. Counsel could not at the same time have credibly argued to the jury that even if Mohamed did kidnap her, he released her in a safe place unharmed. And counsel could have reasonably concluded that requesting such a jury instruction would have undercut his "she's a liar" defense. *See, e.g.*, *State v. Keith*, 79 Ohio St.3d 514, 536, 684 N.E.2d 47 (1997) (failure to present mitigating evidence not "demonstrably deficient trial strategy" when it was at least arguably consistent with defendant's claim of complete innocence).

{¶ 23} Furthermore, a safe-place-unharmed instruction would have opened the door for the prosecution to argue that Mohamed had caused profound psychological damage to J.K.—a point that J.K. emphasized after trial in her victim's letter, which the judge mentioned at the sentencing hearing. Defense counsel may well—and quite reasonably—have thought it better to avoid discussion of lasting emotional injury done to J.K. This is a factor that the appellate court does not consider, because under its reasoning, the state could not have presented to the jury any evidence regarding the psychological harm J.K. suffered.

{¶ 24} Our determination that counsel was not ineffective is premised on the appropriate definition of "unharmed" in R.C. 2905.01. The concurring opinion suggests that under any definition of "unharmed" (even the erroneous definition adopted by the court of appeals), trial counsel provided effective assistance, and therefore, we should avoid addressing the proposition of law on which this case was accepted. But we must identify what the law is before we can determine

whether counsel's strategy in not requesting an instruction on it was reasonable. The analysis about what is reasonable trial strategy would be different in a hypothetical case—under a hypothetical statute—where only physical harm could be considered. Our job is to decide the case before us, not hypotheticals. Under the proper definition of "unharmed" in R.C. 2905.01, it was not ineffective assistance for counsel to not ask for the instruction. Doing so would have undermined counsel's trial strategy and opened the door for testimony about the psychological harm suffered by the victim.

{¶ 25} Mohamed has not overcome the presumption that his counsel's failure to request the safe-place-unharmed instruction was a matter of trial strategy. *See Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. Accordingly, the court of appeals erred in finding that his counsel was ineffective.

## B. Plain Error

{¶ 26} We reach a similar conclusion on the Eighth District's determination that the failure to provide the instruction amounted to "plain error." To establish plain error, a defendant must show that (1) there was an error or deviation from a legal rule, (2) the error was plain and obvious, and (3) the error affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). We find plain error only " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Clayton*, 62 Ohio St.2d at 47, 402 N.E.2d 1189, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 27} When the decision not to request a particular jury instruction may be deemed to be part of a reasonable trial strategy, we will not find plain error. *Clayton* at 47-48; *State v. Claytor*, 61 Ohio St.3d 234, 240, 574 N.E.2d 472 (1991). Thus, in *Clayton* we found no plain error when counsel had failed to request an instruction on a lesser included offense and instead sought a total acquittal for his client. Similarly, in *Claytor*—a death-penalty case in which the defendant was convicted

of aggravated murder—we found no plain error in the trial court's failure to provide an instruction on the lesser included offense of murder when counsel's "tactical decision" was to argue that his client was not guilty by reason of insanity. *Claytor* at 240.

{¶ 28} The same goes here. Having determined that counsel's decision not to request an instruction on the safe-place-unharmed defense falls within a reasonable trial strategy, we will not find that the trial judge committed plain error in failing to provide the unrequested instruction. Mohamed has failed to show that the trial judge's decision not to give the jury the instruction was obvious error, that it deviated from clear legal rules, or that it affected the outcome of the trial.

## IV. Conclusion

{¶ 29} The court of appeals erred in failing to use the plain and ordinary meaning of "unharmed" in applying the provision of Ohio's kidnapping statute that reduces the level of offense when the victim is released "in a safe place unharmed," R.C. 2905.01(C)(1). For purposes of the statute, harm may encompass both physical and psychological harm.

{¶ 30} Mohamed failed to overcome the presumption that the failure to request the instruction was a matter of trial strategy. Accordingly, Mohamed's counsel was not ineffective in failing to request such an instruction and the trial judge did not commit plain error in failing to provide the instruction. We reverse the judgment of the court of appeals and remand to the court of appeals for consideration of the assignment of error relating to consecutive sentences that it deemed moot.

Judgment reversed
and cause remanded.

O'CONNOR, C.J., and KENNEDY and FRENCH, JJ., concur.

O'DONNELL, J., concurs in judgment only.

FISCHER, J., concurs, with an opinion.

O'NEILL, J., dissents, with an opinion.

_____

**FISCHER, J., concurring.**

**{¶ 31}** I join only Sections I and III and the final paragraph of Section IV of the majority opinion. The dispositive issue to be adjudicated in this case is whether appellee's, Shuaib Haji Mohamed's, defense attorney provided ineffective assistance of counsel by failing to request a jury instruction regarding the reduction in the offense level for kidnapping that is potentially provided in R.C. 2905.01. As the majority notes, a request by Mohamed's counsel for any "victim-released-unharmed" jury instruction would have undermined counsel's rather reasonable "no-offense-occurred" trial strategy. Based on this, I would find that Mohamed's counsel was not ineffective for failing to request the jury instruction, regardless of the meaning of "unharmed."

**{¶ 32}** Despite the majority's assertion to the contrary, Section II of the majority opinion answers a question that is not necessary to resolve this case and is, therefore, dicta or advisory. It is well settled that this court does not issue advisory opinions. *State ex rel. White v. Kilbane Koch,* 96 Ohio St.3d 395, 2002-Ohio-4848, 775 N.E.2d 508, ¶ 18, citing *State ex rel. Baldzicki v. Cuyahoga Cty. Bd. of Elections*, 90 Ohio St.3d 238, 242, 736 N.E.2d 893 (2000), and *Egan v. Natl. Distillers & Chem. Corp.*, 25 Ohio St.3d 176, 495 N.E.2d 904 (1986), syllabus.

**{¶ 33}** I would decide this case more narrowly by answering the Sixth Amendment question only. For this reason, I join the majority opinion to the extent that it holds, correctly, that Mohamed's Sixth Amendment right to effective counsel was not violated.

_____

**O'NEILL, J., dissenting.**

**{¶ 34}** Respectfully, I must dissent.

**{¶ 35}** I would dismiss this case as having been improvidently accepted. There is no legal question to be decided in this case. Contrary to the majority's assertion, the Eighth District Court of Appeals did not conclude that Mohamed released J.K. in a safe place unharmed and it did not reason that "harm" could not include psychological harm. The Eighth District remanded this case for a new trial on the kidnapping charges.[2] In fact, the Eighth District specifically disavowed the view that a victim's psychological harm is insignificant or that psychological harm could be considered no harm at all. 2016-Ohio-1116, ¶ 36. So I agree with the majority and the Eighth District that psychological harm can be harm for purposes of the safe-place-unharmed provision of R.C. 2905.01. The only question posed by this case is factual and should be decided by a jury, not by this court. By taking the fact-finding role away from the jury and substituting themselves in the jurors' place, the justices in the majority effectively undermine the authority of juries, render the graduated-level-of-offense structure of the kidnapping statute meaningless in these circumstances, and establish a troubling precedent.

**{¶ 36}** The kidnapping statute clearly and properly establishes graduated levels of offense depending on the circumstances of the particular case. R.C. 2905.01. The level of the offense at issue in this case depends on whether the safe-place-unharmed provision in R.C. 2905.01(C)(1) was satisfied, and so it depends on a factual determination. It is the duty of the trier of fact to determine the facts in a kidnapping case and then apply the statute to those facts. It is the job of the trier of facts to decide whether a kidnapping victim was released in a safe place unharmed. The logic of the law is unassailable: absent an incentive based upon the

---

[2] Although the court of appeals reversed only one of Mohamed's two kidnapping convictions, I agree with the majority's comment in ¶ 10, fn. 1, that the court of appeals' logic applies to both kidnapping convictions.

safety of the victim, a kidnapper might be more likely to injure or even kill the victim/witness.

**{¶ 37}** If the victim is not released in a safe place unharmed, the crime is a first-degree felony, except as otherwise provided in the statute. R.C. 2905.01(C)(1). If the victim is released in a safe place unharmed, the crime is a second-degree felony, except as otherwise provided in the statute. *Id.* I truly believe that the General Assembly structured the kidnapping statute this way in order to save the lives of kidnapping victims. There can be no doubt that the statute is structured to punish the worst offenders more severely and to provide an incentive for perpetrators to release their victims unharmed.

**{¶ 38}** Of course, the statute works properly only if it is applied properly. The trial-court judge has the duty to instruct the jury on the statute so that the jurors can apply the statute to the facts of the case before them.

**{¶ 39}** This case is before this court because that did not happen. Defense counsel did not request the instruction on the safe-place-unharmed provision, and the trial court did not properly instruct the jury. The jury was never given the opportunity to consider whether Mohamed was eligible to be convicted of the lower-level, second-degree felony based on his actions. Mohamed appealed, and the Eighth District found error and remanded the case for a new trial on the kidnapping charges. The court of appeals found that, on this record, the trial court had committed plain error in failing to give the instruction and trial counsel had been ineffective in failing to request the instruction. I agree.

**{¶ 40}** It is well settled that plain error should be noticed with the utmost caution and only to prevent a manifest miscarriage of justice. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 23. To establish plain error, an appellant must show that there has been deviation from a legal rule and there is a reasonable probability that the error resulted in prejudice. *Id.* at ¶ 22. This is the same standard used in reviewing ineffective-assistance-of-counsel claims. *Id.* The

United States Supreme Court has explained that a reasonable probability of prejudicial error exists when "the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." *United States v. Dominguez Benitez*, 542 U.S. 74, 83, 124 S.Ct. 2333, 159 L.Ed.2d 157, quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 41} Remand was the correct next step for this case. The record in this case contains little evidence indicating the extent of the harm, physical or psychological, to the victim. I am unpersuaded that it was reasonable trial strategy for defense counsel to fail to request the safe-place-unharmed instruction. Asserting that the victim was released in a safe place unharmed is entirely consistent with Mohamed's defense strategy that this was not a kidnapping—that he took her where she wanted to go. Asserting that the victim was released unharmed is not an admission of guilt. There is a substantial probability that, on this record, a jury would have returned a conviction for second-degree kidnapping had it been instructed on the safe-place-unharmed provision of the statute. In short, justice was not served here. The kidnapping charges should go back to a jury.

{¶ 42} The Eighth District did not decide that psychological harm is not harm for purposes of the kidnapping statute. It is clear that psychological harm can be considered harm under the kidnapping statute. What is left to be decided in this case is a factual question, was *this* victim released by *this* defendant in a safe place unharmed? That is a factual question, not a legal question. This court should take care not to remove this decision from the people who are in the best position to make it. I dissent.

_____

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anthony T. Miranda and Kelly N. Mason, Assistant Prosecuting Attorneys, for appellant.

Robert L. Tobik, Cuyahoga County Public Defender, and Erika B. Cunliffe, Assistant Public Defender, for appellee.

_____