[Cite as *State v. Thomas*, 2019-Ohio-4247.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

RANDY A. THOMAS

    Appellant

C.A. No.    29112

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR-2013-07-2069

DECISION AND JOURNAL ENTRY

Dated: October 16, 2019

HENSAL, Judge.

**{¶1}** Randy Thomas appeals from the judgment of the Summit County Court of Common Pleas, denying his petition for post-conviction relief. This Court affirms.

I.

**{¶2}** This Court has previously set forth the relevant factual and procedural background as follows:

> This case stems from an altercation that occurred between Thomas and Anthony Smith, the victim in this matter. According to Thomas, he and Smith agreed to a fist fight after exchanging verbal remarks. It was Thomas' testimony that, after he threw the first punch, Smith pulled out a gun. According to Thomas, he wrestled the gun from Smith and shot Smith multiple times because he started coming toward Thomas again. Smith died as a result of his gunshot wounds.
>
> A grand jury indicted Thomas on one count of aggravated murder and one firearm specification. At trial, Thomas took the stand and argued self-defense. Although the jurors ultimately rejected his defense, they did not find him guilty of aggravated murder. Instead, the jury found him guilty of the lesser-included offense of murder and the attendant firearm specification. The court sentenced Thomas to 18 years to life in prison on those charges, and this Court affirmed its

judgment on direct appeal. *See State v. Thomas*, 9th Dist. Summit No. 27266, 2015–Ohio–2935.

While Thomas' direct appeal was pending, he filed a petition for post-conviction relief on numerous grounds. The State then filed a motion to dismiss the petition, and Thomas filed a reply. The trial court reviewed the written filings and determined that the petition did not warrant a hearing or an opportunity for discovery. Consequently, it denied the petition on all grounds.

*State v. Thomas*, 9th Dist. Summit No. 27698, 2016-Ohio-5507, ¶¶ 2-4

**{¶3}** Mr. Thomas then appealed the trial court's denial of his petition for post-conviction relief. *Id.* at ¶ 5. This Court affirmed in part and reversed in part, concluding that the trial court erred by not holding an evidentiary hearing. *Id.* at ¶ 23. On remand, the case was transferred to a visiting judge who held a hearing on Mr. Thomas's petition. Following the hearing, the trial court denied Mr. Thomas's petition. He has now appealed, raising two assignments of error for our review. For ease of consideration, we will address his assignments of error together.

## II.

### ASSIGNMENT OF ERROR I

COUNSEL WAS INEFFECTIVE UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE FEDERAL CONSTITUTION AND ART. I SEC. 10 OF THE OHIO CONSTITUTION BY FAILING TO INVESTIGATE AND PRESENT AVAILABLE EVIDENCE OF THOMAS'[S] STATE OF MIND.

### ASSIGNMENT OF ERROR II

COUNSEL WAS INEFFECTIVE UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE FEDERAL CONSTITUTION WHEN THEY FAILED TO SECURE SERVICES OF MENTAL HEALTH EXPERT TO TESTIFY CONCERNING THE STIPULATED EXHIBITS AND ITS IMPACT ON THOMAS'[S] STATE OF MIND AND SUBJECTIVE ELEMENTS OF SELF DEFENSE; THOMAS WAS DENIED A COMPLETE DEFENSE AS A RESULT UNDER THE SIXTH AND FOURTEENTH AMENDMENTS.

{¶4} In his first assignment of error, Mr. Thomas argues that the trial court erred by denying his petition for post-conviction relief because his trial counsel rendered ineffective assistance when they failed to investigate and present available evidence regarding his "very low intelligence" and personal background, which was relevant to the subjective component of his claim for self-defense, and to the jury's assessment of his credibility. He argues that the jurors could not place themselves "in [his] shoes[,]" which deprived him of a complete defense. In his second assignment of error, Mr. Thomas argues that his trial counsel rendered ineffective assistance by not hiring a mental-health expert to testify regarding the available records and their impact on his claim for self-defense. For the reasons that follow, this Court disagrees.

{¶5} This Court reviews a trial court's decision to grant or deny a petition for post-conviction relief under Revised Code Section 2953.21 for an abuse of discretion. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 58. Here, the trial court held that Mr. Thomas failed to establish a claim for ineffective assistance of counsel. "[I]n Ohio, a properly licensed attorney is presumed competent." *Id.* at ¶ 62. To prove ineffective assistance of counsel, the defendant must establish that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.* at paragraph three of the syllabus. If a defendant fails to prove one prong under *Strickland*, this Court need not address the other prong. *State v. Lortz*, 9th Dist. Summit No. 23762, 2008-Ohio-3108, ¶ 34.

{¶6} Initially, we note that Mr. Thomas asserts that "[i]f the Court decides Strickland applies rather than Cronic, then [he] has met his burden of showing that there is a 'reasonable probability' that counsel's deficient performance prejudiced him." In *United States v. Cronic*, 466 U.S. 648 (1984), the United States Supreme Court "recognized that some circumstances are so likely to prejudice the defendant that no showing of prejudice is necessary." *State v. Sanders*, 92 Ohio St.3d 245, 277 (2001). These circumstances include the complete denial of counsel at a critical stage of the trial, the complete failure of counsel to subject the prosecution's case to meaningful adversarial testing, counsel's active representation of conflicting interests, and where defense counsel was appointed only a few minutes before trial commenced. *Id.*, citing *Cronic* at 659-661. "Apart from circumstances of that magnitude, however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.*, quoting *Cronic* at 659, fn. 26.

{¶7} Aside from noting that "[i]t is not necessary to prove prejudice if Cronic is used instead of Strickland[,]" Mr. Thomas has not developed an argument – including citations to authority and the relevant portions of the record – as to why the U.S. Supreme Court's decision *Cronic* rather than *Strickland* applies. *See* App.R. 16(A)(7); *State v. Franks*, 9th Dist. Summit No. 28533, 2017-Ohio-7045, ¶ 16 (declining to develop an argument on behalf of the appellant). Notwithstanding, given this Court's reasoning and holding below, any argument in that regard would have lacked merit. We, therefore, will proceed with an analysis under *Strickland*.

{¶8} Mr. Thomas correctly argues that a defendant's state of mind in a self-defense case is crucial. *State v. Koss*, 49 Ohio St.3d 213, 215 (1990). His merit brief makes clear that he is not arguing diminished capacity, which is not a defense in Ohio, and he has not argued that his intellectual disabilities rendered him incompetent to stand trial. *State v. Wilcox*, 70 Ohio St.2d

182 (1982), paragraph one of the syllabus ("The partial defense of diminished capacity is not recognized in Ohio."). Instead, he asserts that is not necessary to label him with anything other than "very low intelligence with more testing recommended * * *."

{¶9} The testimony from the post-conviction-relief hearing indicates that Mr. Thomas's trial attorneys knew that Mr. Thomas was "slow," and that it played a role in their trial strategy. Although they admitted that they did not investigate or present available records that would have supported their position that Mr. Thomas suffered from intellectual disabilities, they testified that their strategy was to demonstrate this through testimony from Mr. Thomas's grandmother. At trial, Mr. Thomas's grandmother testified that Mr. Thomas was born prematurely, and – because of his mother's drug use during pregnancy – addicted to cocaine. She testified that Mr. Thomas was "slow * * * in his classroom; he was slow at home. He didn't comprehend anything too fast." She further testified that Mr. Thomas had trouble understanding situations, and that he often needed things explained to him.

{¶10} Mr. Thomas testified on his own behalf, acknowledging his developmental delays and stating that he has trouble "understanding as quick and catching on as quick as * * * someone[ whose] parent * * * didn't do drugs with them." Mr. Thomas's trial counsel then addressed Mr. Thomas's "capabilities or lack thereof" during closing arguments, to which the State responded by arguing that "there is no evidence that [Mr. Thomas] is slow, other than him and his grandmother. We don't have any school records or anything like that. Nothing."

{¶11} Mr. Thomas's trial attorneys testified that the crux of their trial strategy was to emphasize the victim's involvement with a violent gang to demonstrate that Mr. Thomas shot the victim in self-defense, and that his doing so was reasonable under the circumstances. As part of this strategy, the defense team subpoenaed the former chief of police to testify regarding local

gang activity and culture, "and in essence what it's like to be threatened or get into an altercation with a gang member, which [the victim] was." One of Mr. Thomas's attorneys testified that they pursued this strategy to appeal to the jury's sense of self-preservation, and to show that "it didn't matter if [Mr. Thomas was] slow or a genius, he understood the business end of a gun and that was the basis of our self-defense argument."

{¶12} While records documenting the extent of Mr. Thomas's intellectual disabilities may have bolstered the defense's position at trial, we cannot say that trial counsels' failure to investigate or present those records resulted in a deficient performance under these facts. We are mindful of Mr. Thomas's argument that the failure to investigate the extent of his intellectual disabilities could not have been a strategic choice. But "[s]imply because there was 'another and better strategy available' d[oes] not mean that counsel provided ineffective assistance." *State v. Mohamed*, 151 Ohio St.3d 320, 2017-Ohio-7468, ¶ 19, quoting *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980). As previously noted, the record indicates that Mr. Thomas's trial counsel was aware that Mr. Thomas suffered from intellectual disabilities, and that their trial strategy was to establish this through his grandmother's testimony. The record further indicates that the crux of his trial counsels' strategy was to emphasize the victim's involvement with a violent gang, and to show that – regardless of someone's cognitive abilities or lack thereof – a reasonable person would have shot the victim to protect his or her own life. Notably, one of Mr. Thomas's trial attorneys testified that jurors could interpret evidence regarding a criminal defendant's IQ as an attempt to escape responsibility, and others could consider it as "just bologna[.]"[1] His other attorney testified similarly, stating that evidence of Mr. Thomas's low IQ "could go the other

---

[1] In his merit brief, Mr. Thomas asserts that his trial attorney thought that IQ evidence was "bologna[.]" Our reading of the transcript, however, indicates that his attorney was explaining how a jury could interpret such evidence.

way[,]" and that the defense team's "angle was, * * * [the victim] was going to kill [Mr. Thomas] and he knew that and that's why he acted the way he did."

{¶13} In light of the facts presented and the testimony regarding the defense team's strategy, we cannot say that Mr. Thomas's trial counsel was deficient for failing to investigate or present available records for the purpose of establishing that he has "very low intelligence[.]" We reach this conclusion having carefully examined Mr. Thomas's argument that the lack of this evidence prevented the jury from standing "in [his] shoes" with respect to his claim for self-defense, and may have affected the jury's assessment of his credibility. The jury heard Mr. Thomas's own account of the events that transpired, as well as his – and his grandmother's – testimony regarding his background and cognitive delays. It was then free to believe or disbelieve any or all of that testimony. *State v. Hunter*, 9th Dist. Summit No. 28484, 2018-Ohio-568, ¶ 32.

{¶14} Even assuming that Mr. Thomas's trial counsels' failure to investigate and present available records documenting the extent of his intellectual disabilities resulted in a deficient performance under *Strickland*, Mr. Thomas has failed to establish that he suffered prejudice, that is, a reasonable probability that the result of the trial would have been different. *Bradley*, 42 Ohio St.3d 136 (1989), at paragraph three of the syllabus. According to Mr. Thomas, the available records would have shown the jury that he suffered seizures at birth, had communicative issues and cognitive delays as a child, continues to have intellectual disabilities that are not readily apparent, has extremely low intelligence,[2] and has a history depression, self-

---

[2] To the extent that Mr. Thomas argues that his trial counsel should have presented records showing an IQ test result from January 2011 (approximately two years prior to the shooting) of 53, Dr. Webb – whose testimony Mr. Thomas argues should have been presented at trial – testified at the post-conviction-relief hearing that the score of 53 was "[a]bsolutely"

doubt, and mood sensitivity. He also argues that available records would have shown that he was not homicidal, and that he had successfully completed an anger-management program. He concludes that "[a]ll of the records not presented support [his] reasonable and honest belief that he was about to be killed or receive great bodily harm."

{¶15} As the State points out, however, the records upon which Mr. Thomas relies also contain information that may have potentially undermined his claim for self-defense. For example, those records contain statements indicating that Mr. Thomas: "has a[] problem with bothering other children that [are] not messing with him"; "gets mad easily"; "loses [his] temper easily"; "blames others for his * * * mistakes or behaviors"; "pushes or shoves classmates"; "[c]an't get along with nobody"; "shows very little self control"; "constantly provokes [and] teases others"; "gets into arguments and fights and 'it is always someone else's fault'"; "needs to learn to control his anger"; "was suspended for fighting w/ a peer"; "has considerable trouble controlling his anger"; and "at times he has become overly vigilant[.]" While Mr. Thomas asserts that these statements would have been excluded at trial under various Rules of Evidence, he has not developed any argument in support of that position. *See* App.R. 16(A)(7). Even if he had, any argument in that regard would have been speculative as to what the trial court – which has broad discretion in determining whether to admit of exclude evidence – would have decided. *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 66 (1991) ("A trial court has broad discretion in determining whether to admit or exclude evidence."); *State v. Moffett*, 9th Dist. Summit No. 28001, 2016-Ohio-5314, ¶ 10-11 (rejecting a claim for ineffective assistance based upon speculation).

---

invalid given that Mr. Thomas passed the Ohio Graduation Tests, and that he would have expressed the same opinion at trial.

**{¶16}** In light of the foregoing, Mr. Thomas has not established that – but for his trial counsels' failure to investigate and present available records relative to the extent of his intellectual disabilities – the jury would have accepted his claim for self-defense and found him not guilty of murder. Accordingly, the trial court did not err by finding that Mr. Thomas failed to establish a claim for ineffective assistance of counsel. *Strickland*, 466 U.S. at 687. Mr. Thomas's first assignment of error is overruled. It, therefore, follows that his second assignment of error challenging his trial counsels' failure to hire a mental-health expert to testify relative to the available records is now moot. App.R. 12(A)(1)(c).

III.

**{¶17}** Mr. Thomas's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

TEODOSIO, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶18} At the time that this Court affirmed Thomas's conviction in 2015, I dissented and wrote that I would reverse and remand for a new trial on the basis that the trial court committed plain error when it delivered its jury instructions. *State v. Thomas*, 9th Dist. Summit No. 27266, 2015-Ohio-2935, ¶ 74-82 (Carr, J., dissenting). In light of the evidence presented at the PCR hearing regarding defense counsel's failure to fully investigate Thomas's mental faculties, I feel even more strongly that Thomas is entitled to a new trial.

APPEARANCES:

JOHN P. PARKER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.